

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 30, 2020

Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street, NY 10007

**Re:    United States v. Michael Falu, 19-cr-937 (NRB) – Bail Application**

Judge Buchwald:

The Government respectfully submits this letter opposing the request by Michael Falu, the defendant, that he be temporarily released on bail from the Metropolitan Correctional Center ("MCC"). Although the Government recognizes that the spread of COVID-19 poses unique and complex challenges, the defendant cannot safely be released back into the community, and the defendant's circumstances do not warrant temporary release.

**I.    Background**

On November 1, 2019, the defendant's federal probation officer conducted a routine visit to the defendant's apartment. When he arrived, the defendant's grandmother answered the front door, invited the probation officer in to the apartment, and walked him to the defendant's bedroom. The grandmother opened the defendant's door, and the probation officer saw narcotics packaging materials on a dresser—specifically, several clear plastic baggies closed with zip ties and a box containing plastic sandwich bags. As the probation officer walked closer to the defendant's bedroom, he saw the defendant get out of his bed, grab the packaging material, and hide it.

Based on that visit, the probation officer obtained a warrant to search the defendant's apartment. The probation officer and other law enforcement officers executed the warrant on November 14, 2019. During the search they discovered a pile of shoeboxes in the defendant's bedroom. In those shoeboxes, they found approximately 12.5 grams of a substance containing cocaine base, approximately 16.5 grams of a substance containing methamphetamine, and fifteen bullets. In other parts of the defendant's room, they also found additional packaging materials and a scale with cocaine residue on it.

The officers conducting the search arrested the defendant for violating the terms of his supervised release. The defendant was presented before Magistrate Judge Parker on November 14, 2019, and he was detained on consent. A grand jury then indicted the defendant on December 13, 2019, and issued a superseding indictment on February 24, 2020. The superseding indictment charges the defendant with possession with intent to distribute mixtures containing cocaine base and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 2, and with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

This latest charge adds to the defendant's long history of drug offenses. In 2006, the defendant was convicted of criminal sale of a narcotic drug in the third degree, in violation of New York Penal Law Section 220.39. In 2009, he was convicted of criminal possession of a controlled substance in the fifth degree, in violation of New York Penal Law Section 220.06, when police caught him selling PCP to another person. In 2011 and 2012, he was convicted for criminal possession of marijuana in the fifth degree, in violation of New York Penal Law Section 221.10. And in 2013, he was convicted for conspiracy to distribute and possession with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

This is also not the first time that the defendant has disregarded the terms of federal supervision. In 2016, while serving his sentence for the federal conviction described above, the defendant left the Bronx Residential Re-Entry Center where he was staying and did not return. He was ultimately arrested and convicted of escape, in violation of 18 U.S.C. § 751(a).

On March 5, 2020, the defendant moved for temporary release from the MCC, arguing that lockdown conditions there created a "compelling reason" for release under 18 U.S.C. § 3142(i). This Court denied the defendant's bail application.

## II. Discussion

The defendant's new emergency bail application should be denied. The defendant's conduct has shown that no conditions of release can assure the safety of the community, and he has not demonstrated that the conditions within MCC warrant his temporary release.

As an initial matter, the defendant has not established that there are conditions of release that can reasonably assure the safety of the community. Because the defendant committed the instant offense while on federal supervised release, he has "[t]he burden of establishing by clear and convincing evidence that [he] will not . . . pose a danger to any other person or to the community." Fed. R. Crim. P. 32.1(a)(6). He has not made that showing. The defendant has a history of drug offenses going back over a decade and has now repeatedly shown that he does not take federal supervision seriously. Indeed, in addition to conduct charged in this case, the defendant has also been arrested multiple times while on supervised release, including an arrest in January 2019 for selling crack cocaine. The charged conduct is also particularly troubling because, while the officers did not discover a firearm during their search, the presence of bullets suggests that the defendant may have access to one.

The defendant is also not entitled to temporary release. Under 18 U.S.C. § 3142(i) a "judicial officer may . . . permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The "defendant has the burden of showing that temporary release is necessary" for one of those enumerated purposes. *See United States v. Dupree*, 833 F. Supp. 2d 241, 246 (S.D.N.Y. 2011).[1]

---

[1] At least one district judge has assumed "similar standards apply under the 'compelling reason' language of § 3142(i)" governing pretrial temporary release and the "'exceptional reasons' language of § 3145(c)" governing presentence release following a conviction for the crimes with

According to the defendant, the conditions at MCC, in light of the rise of COVID-19 cases in New York City, make releasing him necessary both for his own safety and the safety of others. While the defendant's concern is understandable, and there is no question that the virus presents new and complex challenges for protecting public health, the defendant has not shown facts that warrant his temporary release.

The Bureau of Prisons ("BOP") is prepared the handle the risks posed by COVID-19, as it is with other infectious diseases and medical conditions. Since at least October 2012, the BOP has had a Pandemic Influenza Plan in place. *See BOP Health Management Resources*, available at https://www.bop.gov/resources/health_care_mngmt.jsp. And beginning in January 2020, the BOP began to plan specifically for COVID-19, to ensure the health and safety of both inmates and the BOP personnel. *See Federal Bureau of Prisons COVID-19 Action Plan*, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp.

As COVID-19 spread outside of the prison system, the BOP took direct action to mitigate the spread of the virus within the prison system. *See id.* Those measures, which the MCC has implemented, include:

- Suspension of social and legal visits: Social visits and legal visits have been suspended for 30 days, although confidential attorney calls are allowed. Inmates are being provided additional telephone minutes each month.

- Inmate movement: All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- Screening and testing of inmates: All newly-arriving inmates are screened for COVID-19 exposure risk factors and symptoms—including by having his or her temperature taken. Inmates with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

- Modified operations: BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

According to a march 18, 2020 letter from the MCC and MDC to Chief Judge McMahon, the MCC has also taken additional measures in light of COVID-19:

---

which the defendant in this case has been charged. *United States v. Spinks*, No. 1:18-CR-00084-JAW-1, 2019 WL 2238359, at *2 (D. Me. May 23, 2019). *See also United States v. Ramnath*, 533 F. Supp. 2d 662, 667 (E.D. Tex. 2008).

- Distribution of hygiene products:  The MCC has delivered soap to each unit, and staff are passing out soap and other hygiene items to inmates.  Any inmate who does not have the money to purchase soap will be given soap at no cost.  Cleaning supplies are available to each unit and staff have been instructed about who to contact if additional supplies are needed.  Inmate orderlies are cleaning the common areas, and inmates have been instructed to wipe down their cells.

- Monitoring of at-risk inmates:  The MCC has moved the majority of its at-risk population—which the MC defines as inmates over 55 years old or diagnosed with certain conditions—to one unit in the building.  Medical staff are aware of all at-risk inmates and are monitoring them.

*See* Ltr. from Warden M. Licon-Vitale (MCC) and Warden D. Edge (MDC) to Chief Judge Colleen McMahon (March 18, 2020).

In light of these steps, the defendant cannot show that his temporary release from the MCC is necessary.  To be sure, the MCC is a densely populated facility.  But the measures it has taken, along with its relative isolation from the outside world, appear to have thus far been successful at reducing the spread of COVID-19 with the jail.  As of March 27, 2020, the MCC has reported only one case of the virus, and that individual is reportedly in isolation.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited Mar. 27, 2020).  And notably, the defendant does not claim that he has any underlying health conditions that make him particularly susceptible to life-threatening complications from COVID-19.  On these facts, the defendant has not established hat his temporary release under 18 U.S.C. § 3142(i) is necessary.

Finally, the defendant's situation is not like those in the small handful of cases ordering bail that the defendant cites.  In *United States v. Raihan*, 20-cr-68 (BMC) (E.D.N.Y. Mar. 12, 2020), for example, Judge Orenstein denied the Government's motion to detain an individual who tested positive for drugs while on bail.  *See* Dkt. 20, at 5-7.  The Court denied the motion, noting that sending the defendant to the MDC might put others in the facility at risk.  *Id.* at 10-13.  The court emphasized that the defendant was "not doing anything to affirmatively endanger people," and that the court was "hesitant to respond to drug usage with incarceration."  *Id.*  Here, by contrast, the defendant has shown that he is a danger to others, and because he was incarcerated before COVID-19 hit the New York area, he is not a risk of bringing the virus into the MCC.[2]

The decision in *United States v. Stephens*, is even further afield.  There, Judge Nathan granted an application for release after finding that "the strength of the [Government's] evidence

---

[2] It bears mention that Mr. Raihan cut off his ankle monitor the day after the Court denied the Government's application for detention.  At that point, the Government moved quickly to locate Mr. Raihan, at which point he was ordered detained.  (*See United States v. Raihan*, 20 Cr. 68 (BMC) (JO), Dkt. No. 22.)  The defendant's reliance on *United States v. Raihan* is inapt.  If anything, that case demonstrates the possibility of flight despite strict conditions.  It also illustrates that the current health crisis has not stopped courts from imposing detention in keeping with their obligations under the Bail Reform Act.

. . . to demonstrate the danger the defendant poses to the community ha[d] been undermined by new information" and because the defendant was not even being allowed "legal calls."  15-cr-95 (AJN), 2020 WL 1295155, at *1, *3 (S.D.N.Y. Mar. 19, 2020).  But the defendant here does not argue that either the evidence for detention has changed, or that he has been denied access to counsel.  Instead, the instant bail application is predicated on the idea that the spread of COVID-19 is a reason for release—an issue that Judge Nathan expressly declined to reach.  *See id.* at *6 n.3 (declining to decide whether health risks from COVID-19 presented a "compelling reason necessitating [the defendant's] release").

In sum, the defendant cannot overcome the presumption that he is a risk to the community, and has not shown that, under the circumstances, temporary release from MCC is necessary.  Accordingly, the Government respectfully requests that his bail application be denied.

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney

by: _____
        Thomas S. Burnett
        Assistant United States Attorney
        (212) 637-1064